1

2

3

*POSTED ON WEBSITE*
*NOT FOR PUBLICATION*

4

5

**UNITED STATES BANKRUPTCY COURT**

6

**EASTERN DISTRICT OF CALIFORNIA**

7

8

9

| | |
|---|---|
| In re | Case No. 19-25168-E-7 |
| MATHEW MANTEIV LAKOTA, | |
| Debtor. | |
| LISA LUCAS, | Adv. Proc. No. 19-2140 |
| Plaintiff, | |
| v. | |
| MATHEW MANTEIV LAKOTA, | |
| Defendant. | |

10

11

12

13

14

15

16

17

18

**This Memorandum Decision is not appropriate for publication.
It may be cited for persuasive value on the matters addressed.**

19

20

**MEMORANDUM OPINION AND DECISION**

21

On August 16, 2019, Mathew Mantiev Lakota, Defendant-Debtor, filed his voluntary

22

Chapter 7 Bankruptcy Case, 19-25168 (the "Bankruptcy Case"). On November 14, 2019, Lisa

23

Lucas, the Plaintiff, commenced this Adversary Proceeding seeking a determination that the

24

obligation owed to her by Defendant-Debtor was nondischargeable. The grounds asserted for

25

nondischargeability of the debt are Embezzlement, Breach of Fiduciary Duty (11 U.S.C.

26

§ 523(a)(4)), and Willful and Malicious Injury (Conversion) (11 U.S.C. § 523(a)(6)). Complaint,

27

Dckt. 1.

28

Defendant-Debtor filed an Answer (Dckt. 8), and has defended himself in *pro se* in this

Adversary Proceeding and at trial. As is demonstrated in the record from trial, including this court's Trial Setting Order (Dckt. 50) that includes a chart of what each party asserted as an undisputed fact, Defendant-Debtor has actively defended himself in this Adversary Proceeding.

For the court, any "factual disputes" are few, and relate to conflicting testimony as to what the respective Parties provide as their "testimony" of their legal conclusions as to whether the assignment of the State Court Judgment at issue in this Adversary Proceeding was an assignment for collection or an absolute assignment with Plaintiff retaining no interests therein.

For the legal issues, first the court must determine whether the Assignment Agreement[1] and Acknowledgment of Assignment[2] are for an absolute assignment or an assignment for collection. Next, after that is determined, for the court to determine based on the facts whether such Assignment Agreement and Acknowledgment of Assignment were breached, and if so, whether such results in nondischargeable damages.

At the conclusion of the Trial, the court afforded both Plaintiff and Defendant-Debtor the opportunity to provide additional post-trial briefing of the legal issues. Plaintiff provided a post-trial brief, but Defendant-Debtor did not.

Plaintiff seeks actual damages of $3,931.71, plus prejudgement interest and punitive damages of $6,068.29, and a determination that these obligations owed to Plaintiff are nondischargeable.

The court having reviewed the evidence (the court's rulings on evidentiary objections stated on the record at trial), assessing the credibility of the witnesses, and applying the applicable law to the transaction between Plaintiff and Defendant-Debtor and the debt arising therefrom; the court determines that the debt owed by Defendant-Debtor is nondischargeable, and that damages of $3,931.71, punitive damages of $6,068.29, and prejudgement interest of $1,022.12 are nondischargeable, based on the separate independent grounds of (1)(a) Defendant-Debtor's breach of fiduciary duty and (b) embezzlement, 11 U.S.C. § 523(a)(4), and (2) willful and malicious injury to Plaintiff by the taking of Plaintiff's property, 11 U.S.C. § 523(a)(6).

---

[1] Exhibit 2.

[2] Exhibit 3.

### REVIEW OF THE TRANSACTION DOCUMENTS BETWEEN PLAINTIFF
### AND DEFENDANT-DEBTOR
### AND EVENTS RELATING THERETO

The court begins with the series of events which bring the Plaintiff and the Defendant-Debtor before the court in this Adversary Proceeding. Plaintiff obtained a judgment against Jeffrey Kahn, her ex-husband ("Ex-Husband"), from the California Superior Court ( the "State Court Judgment"). When the obligation owed on the State Court Judgment was not paid by Ex-Husband, Plaintiff entered into the Assignment Agreement and the Acknowledgment of Assignment so that Defendant-Debtor, in the ordinary course of his business, could enforce the State Court Judgment and recover monies owed by Ex-Husband to Plaintiff.

**Testimony in the Adversary Proceeding**

In her Direct Testimony Statement and testimony at trial, Plaintiff states that she sought the services of Defendant-Debtor to recover the monies due Plaintiff by Ex-Husband on the State Court Judgment. She further testified that Defendant-Debtor was in the business of collecting monies due on judgments obtained by others. Plaintiff Direct Testimony Statement, ¶ 2. In his Direct Testimony Statement, Defendant-Debtor describes his business as:

> I [Defendant-Debtor] am in the business of satisfying judgments that have been assigned to me.

Defendant-Debtor Direct Testimony Statement, p. 2:6; Dckt. 54.

Defendant-Debtor testified that he has been engaged in this business for "years." *Id*., p. 2:8-9. In his Pre-Trial Statement, Defendant-Debtor stated as an undisputed fact that "Lakota is in the business of enforcing judgments fully assigned to him by entities in California courts." Defendant-Debtor Pre-Trial Statement, p. 2:24-25; Dckt. 48.

Plaintiff, consistent with Defendant-Debtor's testimony and statements of being in the business of collecting judgments, has included as Exhibits 14 through 23, 25-28, 30-31, and 34-37, copies of Acknowledgments of Assignments by other persons assigning judgments to Defendant-Debtor. The form of the Acknowledgment is consistent with that drafted by Defendant-Debtor for the assignment of Plaintiff's State Court Judgment. These are consistent with Defendant-Debtor's presentation to the court of his depth of experience in taking assignment of judgments and his

1  arguments of the law concerning assignment of judgments.

2      There is no dispute that Defendant-Debtor was assigned the State Court Judgment from

3  Plaintiff and that taking the assignment was part of Defendant-Debtor's well-established business

4  of enforcing judgments assigned to him by the original judgment creditors to recover for Defendant-

5  Debtor's and the assigning creditor the monies owed on the assigned judgment.  The dispute that

6  arises becomes a legal one as to the contractual effect of such assignments – whether it is an

7  assignment for collection of a debt, for which the assignee owes various duties and obligations to

8  the assignor, or if it is an absolute assignment, with the assignee "merely" owing only a purchase

9  price to be paid pursuant to the terms of the contract assigning the judgment.

10 **Documentary Evidence**

11     For the assignment of the State Court Judgment before the court, two documents have been

12 presented to the court – the Assignment Agreement executed by Plaintiff and Defendant-Debtor, and

13 the Acknowledgment of Assignment[3] executed by Plaintiff.  These are the written documents stating

14 the terms of the assignment of the State Court Judgment and providing notice of the assignment.

15     <u>Assignment Agreement</u>

16     Exhibit 2 is a copy of the Assignment Agreement between Plaintiff and Defendant-Debtor,

17 dated March 12, 2014, for assignment of the State Court Judgment.  The terms of the Assignment

18 Agreement are summarized as follows (unless the terms are set forth in "quotation marks"):

19     A.    Plaintiff assigns to Defendant-Debtor the State Court Judgment in Plaintiff's favor
20           against Ex-Husband in Case no. FL036366 which judgment is in the amount of
             $12,805.01.  The assignment includes all of the existing and future costs, fees,
21           expenses, and interest that are owed under the State Court Judgment.

22     B.    Plaintiff agrees to cooperate fully with Defendant-Debtor in Defendant-Debtor's
             efforts to enforce the State Court Judgment.[4]

23

24     [3] An acknowledgment of assignment is required under state law to be filed in the court that
25 issued the judgment in order for the assignee to use the judicial process to enforce the judgment.
   California Code of Civil Procedure § 673.

26     [4] In the Assignment Agreement, some of the pleadings filed, and some arguments, reference is
27 made to Defendant-Debtor being responsible to "satisfy the judgment."  From the documents, evidence,
   and testimony, it is clear that Defendant-Debtor was not obligated to "satisfy," as in personally pay the
28 State Court Judgment as if he was a co-obligor.  Rather, Defendant-Debtor is being assigned the State
   Court Judgment so that he can enforce that judgment and make Ex-Husband pay the obligation he owed

C.  The consideration for Defendant-Debtor enforcing the State Court Judgment is that:

1.  Defendant-Debtor "shall share in any recovered monies from [Ex-Husband] in a split of 34% for [Defendant-Debtor] and 66% for [Plaintiff]." Exhibit 2; Assignment Agreement, fifth paragraph.

2.  The Assignment Agreement requires that the 34%/66% Split "shall be divided" on or about the first of each month as Defendant-Debtor obtains the monies. *Id.*

3.  Excepted from the 34% - 66% "Split" are monies expended by Defendant-Debtor in enforcing the State Court Judgment, and any such monies recovered "shall be the property of [Defendant-Debtor]." *Id.*, ¶ 6.

The Assignment Agreement makes no provision for payment of monies by Defendant-Debtor at some later time or from any sources other than the monies recovered from the Ex-Husband. The plain language of the Assignment Agreement expressly requires that Defendant-Debtor SHALL, and is obligated to, disburse to Plaintiff monthly her 66% Split monthly from the monies recovered on the Ex-Husband's State Court Judgment obligation.

There is one exception to the "shall Split" 34%/66% provision of the Assignment Agreement (which was drafted by Defendant-Debtor). This is for any monies recovered on the State Court Judgment for monies expended by Defendant-Debtor in enforcing the State Court Judgment. Those monies are not to be "Split" and are stated to be "property of [Defendant-Debtor]."

The Defendant-Debtor's and Plaintiff's respective interests in and rights to their 34% and 66% Splits of the monies recovered, is consistent with the common definition of the word "split" as addressed in the Merriam-Webster Dictionary: [5]

**split** verb
. . .
3: to divide into parts or portions: such as
a: to divide between persons : SHARE
. . .
4: to separate (the parts of a whole) by interposing something
. . .
intransitive verb
4: to apportion shares

---

on the State Court Judgment.

[5] https://www.merriam-webster.com/dictionary/split#:~:text=1a%20%3A%20to%20become%20split,factions%20split%20from%20the%20group

1   Reviewing the plain language of the Assignment Agreement drafted by Defendant-Debtor,

2   it states that for every non-expense dollar recovered from the enforcement of the State Court

3   Judgment by Defendant-Debtor, 34% is "Split" to be Defendant-Debtor's monies and 66% is "Split"

4   to be Plaintiff's monies.

5   <u>Acknowledgment of Assignment of Judgment</u>

6   Exhibit 3 in this Adversary Proceeding is a copy of the Acknowledgment of Assignment of

7   Judgment ("Acknowledgment of Assignment") prepared by Defendant-Debtor and filed in the State

8   Court Action. This Acknowledgment of Assignment is dated March 12, 2014, and after providing

9   general information about the Plaintiff and her Ex-Husband, contains the following two paragraphs

10  about the assignment of the State Court Judgment (identified by paragraph number in the

11  Acknowledgment):

12   

13  7)   [Plaintiff] herein transfers, and assigns all title, rights, ownership and interest in this Judgment to the following: [Defendant-Debtor].

14  8)   Respondent, [Plaintiff] hereby assigns to and authorizes the new Assignee,

15  [Defendant-Debtor] to recover, compromise, settle (in full or partial) and enforce said judgment described above at his discretion.

16  Defendant-Debtor's defense has centered on this being an absolute, unconditional, unlimited

17  assignment of the State Court Judgment for which he is the owner, having only a monetary

18  obligation to pay Plaintiff at some later date.

19  However, as discussed herein, if it was "absolute," then why would Plaintiff be authorizing

20  Defendant-Debtor to recover, compromise, settle, and enforce the judgment? No such authorization

21  is necessary if there was an absolute assignment made. It would only be necessary and proper if

22  Plaintiff retained an interest in the State Court Judgment and Defendant-Debtor wanted to make it

23  clear that he "controlled all the shots" in enforcing and recovering the obligation owed by Ex-

24  Husband.

25  **Enforcement of the Assigned State Court Judgment,**
    **Recovery of Monies on the State Court Judgment, and**
26  **Pay Plaintiff Her 66% Split of Monies Recovered by Defendant Debtor**

27  After obtaining the assignment of the State Court Judgment, Defendant-Debtor was able to

28  enforce the State Court Judgment through Ex-Husband's Chapter 13 bankruptcy case (16-26950).

In the Ex-Husband's Chapter 13 Bankruptcy Case, Defendant-Debtor filed Amended Proof of Claim 7-2 to obtain payment on the State Court Judgment. Exhibit 8, 9; Original Proof of Claim No. 7-1 and Amended Proof of Claim 7-2. Amended Proof of Claim 7-2 states the claim being in the amount of $17,384.24, for which the basis is stated to be a "Civil Judgment out of Butte County." It further states that the claim has been acquired from Plaintiff.[6]

Through the Ex-Husband's Chapter 13 Plan, $7,472.29 was disbursed to Plaintiff-Debtor on the assigned State Court Judgment. Jan Johnson, the Chapter 13 Trustee in Ex-Husband's Chapter 13 Case has provided his testimony and copies of distribution records for the $7,472.29 disbursed to Defendant-Debtor for the obligation owed on the State Court Judgment. *See*, Direct Testimony Statement of Trustee Jan Johnson, Exhibit 1, which include Trustee Johnson's prior Declaration, Distribution History stating payments to Defendant-Debtor during the period September 29, 2018, through July 31, 2019, totaling $7,472.29, and copies of the distributions checks endorsed and cashed by Defendant-Debtor incorporated into the Direct Testimony Statement.

Though having received $7,472.29 over a ten-month period, Defendant-Debtor made only one payment of $1,000.00 in March 2018 to Plaintiff for her 66% Split of the monies recovered on the State Court Judgment. No other portion of the 66% percent Split monthly for Plaintiff from the monies received by Defendant-Debtor were paid to Plaintiff.

Plaintiff computes her 66% Split of the $7,472.29 recovered (collected) to be $4,931.41. After crediting the $1,000.00 received from Defendant-Debtor, Plaintiff computes her claim against Defendant-Debtor to be $3,931.71 for her 66% Split of the monies recovered by Defendant-Debtor but not distributed to her as the Assignment Agreement provides "SHALL" be disbursed to her as such monies were recovered on the judgment.[7]

/ / /

/ / /

---

[6] Exhibit 12 is a copy of the Order on the Objection to the Claim of Defendant-Debtor in the Ex-Husband's Bankruptcy Case. That Order allows Defendant-Debtor's claim on the assigned State Court Judgment in the amount of $16,341.30.

[7] Assignment Agreement, fifth paragraph; Exhibit 2.

**APPLICABLE LAW AND
DETERMINATION THAT THE ASSIGNMENT WAS
AN ASSIGNMENT FOR COLLECTION**

The court first determines the applicable law for determining whether the Assignment Agreement and the Acknowledgment of Assignment constitute an absolute assignment of the State Court Judgment to Defendant-Debtor or is an assignment for collection. The court then applies the law to the Assignment Agreement and Acknowledgment of Assignment, making such factual determinations and rulings as necessary.

**Assignment for Collection Law**

The court reviews California law concerning the assignment of obligations owed to a creditor to a third-party for collection. As discussed above, under California law, though obtaining all of the rights and interests to enforce the debt, when a debt is assigned for collection, a fiduciary relationship arises between the assignor original creditor and the assignee for collection.

In *Elam v. Arzaba*, 122 Cal. App. 742 (1932), the California Court of Appeal discussed the rights, duties, and obligations obtained and owed when a debt is assigned for collection. The discussion by the court in *Elam v. Arzaba* of these rights, duties, and obligation when there is an assignment for collection includes:

> Upon assignment for the purpose of collection the assignee has been referred to as the trustee or agent of the assignor. ( *Toby v. Oregon Pacific R. R. Co.*, 98 Cal. 490, at page 497.) Whether regarded as the agent or the trustee of the assignor the obligations of the assignee are practically the same. (Civ. Code, sec. 2322; *Darrow v. Klein*, 111 Cal. App. 310.) . . . A fiduciary relationship existed between [assignor] and all those connected with the [assignee for collection] in the prosecution of the claim and appellant and his associates were under obligation to act in the highest good faith by reason of such relationship. They could not obtain any advantage by the slightest misrepresentation or concealment (Civ. Code, sec. 2228); nor could they take part in any transaction in connection with the justice court action in their own interest and for their own benefit without the consent of [assignor] after full knowledge of the facts and of their motives. (Civ. Code, sec.2230.) . . .

*Elam v. Arzaba*, 122 Cal. App. at 746.

The California Supreme Court revisited the vesting of rights for an assignment for collection in *National Reserve Co. v. Metropolitan Trust, Co.*, 17 Cal. 2d 827, 831 (1941), stating:

> It is well established that an assignment of a chose in action for collection vests the legal title in the assignee whether or not any consideration is paid therefor. In such case the assignee may maintain a suit thereon in his own name, even though the

8

assignor retains an equitable interest in the thing assigned. ( *Greig v. Riordan*, 99 Cal. 316; *Morrison v. Veach*, 190 Cal. 507; *Cohn v. Thompson*, 128 Cal. App. (Supp.) 783.) The instrument in question therefore constitutes a valid assignment of the certificate to plaintiff.

The California Supreme Court followed up a year later in *R.E. Harrison v. Adams*, 20 Cal. 2d 646, 650 (1942), reaffirming that while the assignee has the right and power to enforce the obligation and recover payment thereon, the assignor retains an equitable interest in the obligation assigned and the assignee owes a fiduciary duty to the assignor.

In 2012, the California Court of Appeal in *California Insurance Guarantee Association v. Workers' Compensation Appeals Board et al*, 203 Cal. App. 4th 1328, 1335 (2012), restated that when an obligation is assigned for collection, while the assignee has the right and power to enforce the obligation, the assignee has fiduciary duties to the assignor of the obligation.   Further, the court also addressed determining the intention of the parties and whether an assignment of an obligation is for collection, stating:

> In determining whether an assignment has been made, "the intention of the parties as manifested in the instrument is controlling." *(National R. Co. v. Metropolitan T. Co., supra*, 17 Cal.2d at p. 832.) "'[A]n assignment, to be effective, must include manifestation to another person by the owner of his intention to transfer the right, without further action, to such other person or to a third person. …'" *(Recorded Picture Company [Productions] Ltd. v. Nelson Entertainment, Inc., supra*, 53 Cal.App.4th at p. 368.)   "The **language of a contract governs its interpretation, if the language is clear**. (Civ. Code, § 1638.) '**A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting**, so far as the same is ascertainable and lawful.' *(Id.*, § 1636; *see* 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 684, p. 617.)" *(County of San Joaquin v. Workers' Comp. Appeals Bd.* (2004) 117 Cal.App.4th 1180, 1184.) **The entire contract must be considered, not just isolated parts, and the words of the contract are to be given their usual and customary meaning**. (Civ. Code, §§ 1641, 1644; *Sass v. Hank* (1951) 108 Cal.App.2d 207, 215.)

*California Insurance Guarantee Association v. Workers' Compensation Appeals Board et al*, 203 Cal. App. 4th at 1335-1336 (emphasis added).

Also in 2012, the California Fourth District Court of Appeal in *Fink v. Shemtov*  210 Cal. App. 4th 599 (2012) addressed a collection contract with very similar language to the Assignment Agreement drafted by Defendant-Debtor at issue in this Adversary Proceeding.  In *Fink*, the court reviewed the well-established law that an assignment for collection vests the legal title to the

obligation in the assignee, and such assignee may maintain suit and enforce the obligation in its own name. *Fink v. Shemtov*, 210 Cal. App. 4th at 610. However, the assignor retains an equitable interest in the obligation assigned. *Id*.

**Contract Interpretation**

The application of California law in determining the terms of a contract was recently addressed by the California Sixth District Court of Appeal in *Hewlett-Packard co. v. Oracle Corp.*, 65 Cal.App. 5th 506 ( 2021), stating:

> To interpret a contract, we look to its language (§ 1638) and ascertain the intent of the parties, if possible, based solely on the contract's written provisions (§ 1639). In doing so, we apply the " 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage' [citation] . . . Thus, if the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning." (*AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 822, 274 Cal.Rptr. 820, 799 P.2d 1253 (AIU Ins.).) At the same time, we "recognize[ ] the 'interpretational principle that a contract must be understood with reference to the circumstances under which it was made and the matter to which it relates. (Civ. Code, § 1647.)' " *(Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 752, 220 Cal.Rptr.3d 650, 398 P.3d 556.)

The Ninth Circuit Court of Appeals has also weighed in on how the court properly determines whether an assignment has been for collection, stating:

> In their brief filed before this court, the Thornburgs point out that the Note and the Thornburgs' personal guaranty did not contain any language stating that the May 18, 1984 assignment was for the purpose of collection. **The absence of any limiting language in the documents does not affect the nature of the assignment. "An assignment absolute in form can be shown to be for collection only.**" *Arthur Pew Constr. Co.*, 965 F.2d at 1575.

*United States v. Thornburg*, 82 F.3d 886, 892 (9th Cir. 1996) (emphasis added).

California law provides additional statutory rules of contractual interpretation, which include the following:

California Civil Code § 1636. Mutual intention to be given effect

> A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful.

California Civil Code § 1639. Ascertainment of intention; written contracts

> When a contract is reduced to writing, the intention of the parties is to be

ascertained from the writing alone, if possible; subject, however, to the other provisions of this Title.

California Civil Code § 1642. Several contracts as parts of one transaction

Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together.

California Civil Code § 1644. Sense of words

The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning; unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed.

California Civil Code § 1645. Sense of words; technical words

Technical words are to be interpreted as usually understood by persons in the profession or business to which they relate, unless clearly used in a different sense.

California Civil Code § 1654. Uncertainty; interpretation against person causing

In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist.

The forgoing is not an exhaustive list of the statutory provisions, but representative of provision relevant to interpreting the Assignment Agreement for the State Court Judgment entered into between Plaintiff and Defendant-Debtor.

## DETERMINATION THAT THE ASSIGNMENT
## IS AN ASSIGNMENT FOR COLLECTION

At the core of the dispute is Defendant-Debtor's contention that there was no assignment for collection, but rather that Defendant-Debtor purchased the State Court Judgment outright, with only promises of payments for the purchase to be made at later dates.

Here, both the Assignment Agreement and the Acknowledgment of Assignment were drafted by the Defendant-Debtor who is self-admittedly very experienced in taking assignments of judgments and then enforcing such judgments to the benefit of himself and the various assignors.

Beginning with the Assignment Agreement, Exhibit 2, it first provides that Plaintiff "agrees to assign" to Defendant-Debtor the State Court Judgment. While stated in the apparent future tense ("agrees to assign" as opposed to "Plaintiff assigns") it is clear from the testimony and documentary

1  evidence presented that this was a present assignment of the State Court Judgment.

2      Continuing with the Assignment Agreement, it includes a provision where Plaintiff is

3  obligated to "cooperate fully" with Defendant-Debtor and provide any information that may help

4  in Defendant-Debtor in enforcing the State Court Judgment.  This locked Plaintiff into assisting in

5  order for Plaintiff to receive her 66% Split of the monies recovered on the State Court Judgment.

6      Nowhere in the Assignment Agreement are either the words "assignment for collection" or

7  "absolute assignment" used.  The clear language of the contractual relationship of the two parties

8  to the Assignment Agreement manifests itself first in the "consideration" for the assignment.  It

9  states that Defendant-Debtor shall <u>share</u> with Plaintiff the monies recovered in his enforcing the

10  State Court Judgment with a Split of 34% of such monies going to Defendant-Debtor and 66% of

11  such monies going to Plaintiff.  Stating that Defendant-Debtor "shall share" (a contractual

12  mandatory sharing)  in the monies, it conversely states that Defendant-Debtor does not share, or

13  have an interest in, the other 66% share of Plaintiff in the monies recovered from the enforcement

14  of the State Court Judgment.  The Assignment Agreement does not say that all of the monies

15  recovered are Defendant-Debtor's.  The Assignment Agreement does not say that Plaintiff is only

16  entitled to payment of monies from some other source by Defendant-Debtor at some times in the

17  future.

18      The plain, clear language of the Assignment Agreement states that Plaintiff's share of the

19  actual monies collected is the remaining 66% Split of the monies recovered.  The court finds

20  credible Plaintiff's testimony that she understood the Assignment Agreement that the 66% of the

21  monies recovered from the enforcement of the State Court Judgment were her monies and that the

22  Split of 34% of the monies were Defendant-Debtor's monies.

23      The court does not find credible Defendant-Debtor's testimony and assertion that 100% of

24  the monies recovered in enforcing the State Court Judgment were Defendant-Debtor's monies and

25  0% of the monies recovered were Plaintiff's.  These statements and assertions are inconsistent with

26  the terms of the Assignment Agreement that was drafted by Defendant-Debtor.

27      The court does not find credible Defendant-Debtor's testimony and assertion that he had

28  merely a monetary obligation to pay Plaintiff, and that Defendant-Debtor had no obligation to

deliver monthly to Plaintiff 66% of the monies recovered by Defendant-Debtor on the State Court Judgment. Defendant-Debtor seeks to ignore, and have the court ignore, the express language of the Assignment Agreement that only a 34% Split of the monies recovered on the State Court Judgment are Defendant-Debtor's monies, and the 66% Split of the monies are the Plaintiff's monies which Defendant-Debtor is obligated to disburse to Plaintiff monthly.

Consistent with this plain reading of the clear language of the Assignment Agreement is a further provision, in which it states that any monies recovered by Defendant-Debtor for expenses incurred in his enforcing of the State Court Judgment "shall not be Split and shall be the property of [Defendant-Debtor]." Plaintiff's 66% Split is computed only after deducting 100% of the proceeds that are for recovery of expenses incurred by Defendant-Debtor in enforcing the State Court Judgment from the monies recovered (collected) by Defendant-Debtor.

This is a classic collection contract. A creditor assigns an unpaid obligation to a "debt collector" ( that term used in its generic sense for a person responsible for obtaining payment on the obligation, not as may be statutorily defined for special state or federal consumer protection laws). The "debt collector" does not pay any money up front for the assignment of the obligation. The "debt collector" does not pay anything from the collector's personal funds for the assignment, but only distributes to the assigning creditor a portion of the monies recovered (collected) in enforcing the obligation and the "debt collector" keeps a portion of the monies recovered (collected). The "debt collector" is first reimbursed from the monies recovered (collected) for out of pocket expenses incurred by the "debt collector" up to that point in time in enforcing the obligation.

The assignment of the State Court Judgment as an assignment for collection is not contradicted by the Acknowledgment of Assignment drafted by Defendant-Debtor. Exhibit 3. The plain and clear language in the Acknowledgment is consistent with the contract providing for an assignment of the State Court Judgment being an assignment for collection. In this Acknowledgment, Defendant-Debtor includes a clear provision that post-assignment Plaintiff "authorizes [Defendant-Debtor] to recover, compromise, settle (in full or partial) and enforce said [State Court Judgment] at his discretion."

If, as Defendant-Debtor asserts, he had purchased the State Court Judgment and owned the

1   State Court Judgment in full, free and clear of any interests or rights of Plaintiff, such an

2   "authorization" would be not only unnecessary, but of no force and effect.

3        The plain, clear language of the Assignment Agreement and the Acknowledgment of

4   Assignment establishes that it is an assignment of the State Court Judgment for collection - not an

5   absolute assignment in which there are no ongoing duties and obligations owing to Plaintiff.  The

6   plain language of the Assignment Agreement (drafted by Defendant-Debtor) states that for every

7   dollar recovered in enforcing the State Court Judgment (after deducting expenses incurred by

8   Defendant-Debtor in enforcing the State Court Judgment), each dollar "shall" be Split between

9   Plaintiff (who gets 66% of each dollar recovered)  and Defendant-Debtor (who gets 34% of each

10  dollar recovered).

11       To the extent that Defendant-Debtor seeks to assert that the Assignment Agreement and

12  Acknowledgment of Assignment drafted by Defendant-Debtor are "ambiguous" and as such there

13  is no plain language, he runs afoul of California Civil Code § 1654, stating that the party who caused

14  the uncertainty, here the Defendant-Debtor, should be interpreted most strongly against Defendant-

15  Debtor as the drafter of the Assignment Agreement.

16       Fortunately, in interpreting this Assignment Agreement and Acknowledgment of

17  Assignment, the court is not having to interpret the contract "most strongly" against Defendant-

18  Debtor.  Rather, the court only needs to read the plain, clear language of the two documents and then

19  apply what is clearly written – the State Court Judgment was assigned by Plaintiff to Defendant-

20  Debtor as an assignment for collection for which Plaintiff is the owner of 64% of every dollar

21  collected (except for monies recovered for expenses incurred by Defendant-Debtor in enforcing the

22  judgment) and Defendant-Debtor is obligated to deliver that 64% of every dollar collected that is

23  Plaintiff's to Plaintiff monthly.

24  **Defendant-Debtor's Arguments and Any Testimony**
    **That The Assignment Was Not an**
25  **Assignment for Collection are Not Credible**

26       In making this determination that the Assignment Agreement is one for collection, this court

27  makes factual findings and credibility determinations as to testimony provided.

28       To the extent that Defendant-Debtor has testified that the Assignment Agreement and the

assignment of the State Court Judgment was not an assignment for collection, but an absolute assignment to Defendant-Debtor for which he had no obligations to Plaintiff other than to pay some monetary obligation at some later date, that testimony is not credible. It is not consistent with the Assignment Agreement. It is inconsistent with the experience in the enforcement of judgment business by Defendant-Debtor as he testifies to this court.

The court goes the further step in concluding that the arguments and testimony by Defendant-Debtor that the Assignment Agreement was an absolute assignment in which all monies recovered (collected) are the Defendant-Debtor's monies are false, and knowingly false, not only in light of the clear language of the Assignment Agreement, but Defendant-Debtor's self-professed long experience in taking assignments of judgments and collecting those assigned judgments. They are presented by Defendant-Debtor as an excuse for avoiding his fiduciary duties and obligations, including delivering monthly to Plaintiff her 66% Split of the monies recovered by Defendant-Debtor on the assigned State Court Judgment.

Defendant-Debtor did not provide the court with one shred of credible evidence or any law as to why or how he could have a good faith belief that the Assignment Agreement is not an assignment for collection. The court requested that Defendant-Debtor file a trial brief, and then a post-trial brief, for Defendant-Debtor to provide the court with the law that Defendant-Debtor was relying on and which supported his contention that the Assignment Agreement was not an assignment for collection. Defendant-Debtor failed to file either, though the court went to the extra effort of affording Defendant-Debtor the opportunity to file a post-trial brief.

## DETERMINATION OF NONDISCHARGEABLE DEBT

The court determining that the Assignment Agreement is an assignment for collection, Defendant-Debtor has the corresponding fiduciary and contractual duties owed to Plaintiff. Contractually, Defendant-Debtor was obligated to monthly disburse to Plaintiff 66% of the monies recovered (collected) on the State Court Judgment. Defendant-Debtor was entitled to recover his expenses before making the monthly 66% Split of the monies recovered (collected) to Plaintiff. Defendant-Debtor did not offer any evidence of any expenses which he was entitled to receive "off the top" of the monies recovered (collected) on the State Court Judgment before making the monthly

15

66% Split disbursement to Plaintiff.

**Breach of Fiduciary Duty and Embezzlement**
**11 U.S.C. § 523(a)(4)**

Though granting extraordinary relief to debtors and their fresh starts through bankruptcy, Congress provides some limits on what debts may be discharged. These provisions are generally found in 11 U.S.C. § 523.

The first asserted basis for why Defendant-Debtor's obligations arising under the Assignment Agreement are not dischargeable is stated to be pursuant to 11 U.S.C. § 523(a)(4), which states:

§ 523. Exceptions to discharge

(a) A discharge under section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
. . .
(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny; . . .

<u>Defalcation While Acting in a Fiduciary Capacity</u>

As addressed by the Ninth Circuit Court of Appeals in *Blyler v. Hemmeter (In re Hemmeter)*, 242 F.3d 1186, 1189 - 1190 (9th Cir. 2001), whether a person is under 11 U.S.C. § 523(a)(4) is a question of federal law, the court's analysis includes:

The core requirements are that the relationship exhibit characteristics of the traditional trust relationship, and that the fiduciary duties be created before the act of wrongdoing and not as a result of the act of wrongdoing." *Runnion*, 644 F.2d at 758. Fiduciary relationships imposed by statute may cause the debtor to be considered a fiduciary under §523(a)(4). *Quaif v. Johnson*, 4 F.3d 950, 953-54 (11th Cir. 1993); *Runnion*, 644 F.2d at 758 n. 2. In general, a statutory fiduciary is considered a fiduciary for the purposes of §523(a)(4) if the statute: (1) defines the trust res; (2) identifies the fiduciary's fund management duties; and (3) imposes obligations on the fiduciary prior to the alleged wrongdoing. *Cf. Windsor v. Librandi*, 183 B.R. 379, 383 (M. D. Pa. 1995) (discussing whether a fiduciary under state securities act qualifies as a fiduciary under §523). *See also Runnion*, 644 F.2d at 759.
. .
. . .
[T]he definition of defalcation includes both the "misappropriation of trust funds or money held in any fiduciary capacity; [and the] failure to properly account for such funds." *Lewis*, 97 F.3d at 1186 (quoting Black's Law Dictionary 417 (6th ed. 1990)). Even innocent acts of failure to fully account for money received in trust will be held as non-dischargeable defalcations; no intent to defraud is required.

In 2013, the U.S. Supreme Court determined that for these defalcations while acting in a fiduciary capacity grounds, there must be a showing that the conduct of the debtor was not merely

a mistake.

> Thus, where the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term requires an intentional wrong. We include as intentional not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent. Thus, we include reckless conduct of the kind set forth in the Model Penal Code. Where actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary "consciously disregards" (or is willfully blind to) "a substantial and unjustifiable risk" that his conduct will turn out to violate a fiduciary duty.

*Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 273-274 (2013).

As discussed in 4 Collier on Bankruptcy, ¶ 523.10[1][b], defalcation can be the failure to produce funds entrusted to a fiduciary. The funds entrusted to Defendant-Debtor are the 66% of the monies recovered (collected) in enforcing the State Court Judgment against Ex-Husband.

Here, as a matter of California law, when there is an assignment for collection, Defendant-Debtor has duties running to Plaintiff akin to those of a trustee of a trust. California law (dating back to the 1800's) has been clear that the assignee in an assignment for collection owed fiduciary duties to the assignor. Here, the Assignment Agreement, as drafted by Defendant-Debtor, clearly states that 66% of the monies recovered (collected) by Defendant-Debtor are Plaintiff's monies.

Defendant-Debtor knew this, knew that the Assignment Agreement expressly required (stating "SHALL") that 66% of the monies recovered (collected) be disbursed monthly to Plaintiff. In violation of his fiduciary duties to Plaintiff, Defendant-Debtor diverted the 66% of the monies belonging to Plaintiff to Defendant-Debtor's own and other purposes.

Defendant-Debtor offered no evidence that his failure to disburse to Plaintiff her 66% of the monies recovered (collected) on the State Court Judgment was by "mere" mistake or done without the conscious disregard for Plaintiff's interest in her 66% Split. The evidence shows that Defendant-Debtor knew of Plaintiff's interests and right to the 66% of the monies recovered (collected), that Defendant-Debtor initially disbursed a portion of the monies recovered (collected) on the State Court Judgment to Plaintiff for her 66% Split, and then later Defendant-Debtor failed to disburse to Plaintiff her 66% split.

The Defendant-Debtor's obligation for the monies owed to Plaintiff pursuant to the Assignment Agreement is nondischargeable pursuant to 11 U.S.C. § 523(a)(4) as arising from

1　defalcation while acting in a fiduciary capacity.

2　　　Embezzlement

3　　　As separate grounds under 11 U.S.C. § 523(a)(4), a debt is nondischargeable if it is due to

4　embezzlement.　The embezzlement grounds do not require there to be a fiduciary relationship.

5　4 Collier on Bankruptcy, ¶ 523.10[1][d], [2]; *In re Littleton*, 942 F.2d 551, 555 (1991).

6　　　Under federal law, embezzlement in the context of nondischargeability has often
　　　been defined as "the fraudulent appropriation of property by a person to whom such
7　　　property has been entrusted or into whose hands it has lawfully come." *Moore v.*
　　　*United States*, 160 U.S. 268, 269, 40 L. Ed. 422, 16 S. Ct. 294 (1885).
8　　　Embezzlement, thus, requires three elements: "(1) property rightfully in the
　　　possession of a nonowner; (2) nonowner's appropriation of the property to a use
9　　　other than which [it] was entrusted; and (3) circumstances indicating fraud." In re
　　　Hoffman, 70 Bankr. 155, 162 (Bankr. W.D. Ark. 1986); *In re Schultz*, 46 Bankr.
10　　　880, 889 (Bankr. D. Nev. 1985).

11　*In re Littleton,* 942 F.2d at 555.　Whether there was an intent to defraud through the embezzlement

12　is a question of fact. *Id*.

13　　　Here, Defendant-Debtor was properly in possession of Plaintiff's money, the 66% Split of

14　the monies recovered (collected) by Defendant-Debtor on the State Court Judgment obligation of

15　Ex-Husband.　In going through the three elements of embezzlement, Defendant-Debtor hits all three:

16　　(1) Property Rightfully in the Possession of a Nonowner.

17　　　As addressed herein,　Defendant-Debtor, pursuant to the terms of the Assignment

18　Agreement, was properly in possession of Plaintiff's 66% Split of all monies recovered (collected)

19　on the State Court Judgment.

20　　(2) Nonowner's Appropriation of the Property to a Use Other Than Which it was Entrusted.

21　　　Once the monies were recovered (collected) in enforcing the State Court Judgment,

22　Plaintiff's 66% Split was entrusted to Defendant-Debtor solely for the purpose of disbursing the

23　66% Split to Plaintiff monthly.　Other than taking the portion off the top (prior to computing the

24　respective Splits of the monies recovered (collected) on the State Court Judgment) for Defendant-

25　Debtor's expenses incurred in enforcing the State Court Judgment, Defendant-Debtor had no right

26　to use, divert, or disburse Plaintiff's 66% Split to anyone or any purpose, other than to Plaintiff.

27　　　Defendant-Debtor offers no law, authority, or other reason why he diverted Plaintiff's 66%

28　Split away from Plaintiff.　Defendant-Debtor offered no credible explanation or reason why he did

1 | not follow the mandate of the Assignment Agreement that "[Defendant-Debtor] shall share in any

2 | monies recovered from [Ex-Husband for the State Court Judgment Obligation] in a split of 34% for

3 | [Defendant-Debtor] and 66% for [Plaintiff]."[8]

4 |     Further, Defendant-Debtor offers no credible explanation or basis for why he violated the

5 | express requirements that:

6 |
7 |       All funds received shall be divided by the agreed split on or about the first of each month as the monies come in to satisfy the [State Court Judgment].[9]

8 |     The evidence clearly establishes that Defendant-Debtor knew that he was holding Plaintiff's

9 | 66% Split in the monies recovered (collected); that Defendant-Debtor knew that his only share of

10 | the monies recovered (collected) was his 34% Split; and that Defendant-Debtor knew that he had

11 | to disburse to Plaintiff monthly her money, the 66% Split.

12 |     Defendant-Debtor offered no credible evidence as why he could have any belief that he was

13 | entitled to 100% of the monies recovered (collected) on the State Court Judgment and Plaintiff's

14 | Split was 0.00%.

15 |     The obligations owed on the Assignment Agreement are nondischargeable pursuant to

16 | 11 U.S.C. § 523(a)(4) as arising from embezzlement.

17 | <u>Willful and Malicious Injury</u>

18 |     The third basis for seeking determination that Defendant-Debtor's obligations to Plaintiff

19 | are nondischargeable are pursuant to 11 U.S.C. § 523(a)(6) – willful and malicious injury to the

20 | property of Plaintiff.  11 U.S.C. § 523(a)(6) provides that a bankruptcy discharge does not discharge

21 | the debtor of an obligation which is a debt

22 |
23 |       (6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

24 |     The modern application of this law has been clearly enunciated by the Supreme Court and

25 | augmented by the Ninth Circuit Court of Appeal.  In *Kawaauhua v. Geiger*, 523 U.S. 57, 61-62, 64

26 | _____

27 |    [8]  Assignment Agreement, Fifth Paragraph; Exhibit 2.

28 |    [9]  *Id*.

(1998), a unanimous Supreme Court stated that the standard for a debt being nondischargeable under 11 U.S.C. § 523(a)(6) as:

> The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a **deliberate or intentional** *injury*, not merely a deliberate or intentional *act* that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, *i.e.*, "reckless" or "negligent," to modify "injury." Moreover, as the Eighth Circuit observed, the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the *consequences* of an act," not simply "the act itself." *Restatement (Second) of Torts § 8A, comment a*, p. 15 (1964) (emphasis added).
>
> . . .
>
> We hold that debts arising from recklessly or negligently inflicted injuries do not fall within the compass of *§ 523(a)(6)*. For the reasons stated, the judgment of the Court of Appeals for the Eighth Circuit is Affirmed.

*Kawaauhua v. Geiger*, 523 U.S. at 61-62, 64.

In 2010, twelve years after *Geiger*, the Ninth Circuit Court of Appeals had the opportunity to address this willful and malicious injury standard. As stated by the Ninth Circuit in *Ormsby v. First Am. Title Co. (In re Ormsby)*, 591 F.3d 1199, 1206 (9th Cir. 2010), the willful injury standard in this Circuit is met "only when the debtor has a subjective motive to inflict injury or when the debtor believes that injury is substantially certain to result from his own conduct." *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1142 (9th Cir. 2002). This second part, "the debtor believes the injury is substantially certain to result from his own conduct" requires such a belief be shown, not merely that others would conclude such.

In *Lockerby v. Sierra*, 535 F.3d 1038, 1043 (9th Cir. 2008), the Ninth Circuit noted that a mere breach of a contract did not automatically result in a willful and malicious injury, but that the court needed to look to determine whether such conduct rose to that of a tort. The elements for a conversion under California law are stated as:

> (2) Elements. The basic elements of the tort of conversion are (a) plaintiff's ownership or right to possession of personal property, (b) defendant's disposition of property in a manner inconsistent with plaintiff's property rights, and (c) resulting damages. (*Fremont Indem. Co. v. Fremont General Corp*. (2007) 148 C.A.4th 97, 119, 55 C.R.3d 621, *infra, § 814*.) The property need not be appropriated to the use of the defendant; it may be destroyed, or merely damaged. (*Staley v. McClurken* (1939) 35 C.A.2d 622, 628, 96 P.2d 805; *see Hernandez v. Lopez* (2009) 180 C.A.4th 932, 939, 103 C.R.3d 376 [cause of action labeled "intentional tort" stated claim for conversion; business owners alleged that prospective buyers sold business that did

not belong to them to third party]; Rest.2d, Torts §§ 223, 226; on destruction or alteration, *see infra*, § 823.)

5 Witkin, Summary 11th Torts § 810(2) (2022)

In the Adversary Proceeding now before the court, Defendant-Debtor did not "merely" elect to breach a contract and thereby cause contractual damages to be owed to Plaintiff. Rather, Defendant-Debtor, with the knowledge that the 66% Split of the monies recovered (collected) on the State Court Judgment were Plaintiff's monies, and monies in which Defendant-Debtor had no interest in or right to, knowingly and intentionally took Plaintiff's monies. This taking is akin to taking money off Plaintiff's table, taking money from Plaintiff's bank account, or diverting money from Plaintiff's Venmo account without authorization to take such monies.

Defendant-Debtor knew that Plaintiff owned the 66% Split of the monies recovered (collected) on the State Court Judgment and intentionally took the monies. There was no dispute as to Defendant-Debtor knowingly taking the monies. There was no dispute that the taking of Plaintiff monies was not authorized by Plaintiff. There was no dispute that Plaintiff was not damaged by the taking of Plaintiff's monies by Defendant-Debtor.

In taking Plaintiff's monies, the 66% Split of the monies recovered (collected) on the State Court Judgment, Defendant-Debtor permanently deprived Plaintiff of those monies she owned. Those monies are gone, and Defendant-Debtor's desire to "convert" his taking of Plaintiff's monies into a mere dischargeable contractual obligation does not alter the fact that as a matter of California law Defendant-Debtor committed the tort of conversion of Plaintiff's monies.

The obligations arising from the conversion of Plaintiff's monies which were her 66% Split of the monies recovered (collected) on the State Court Judgment are nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

## COMPUTATION OF DAMAGES

There was no *bona fide* dispute by Defendant-Debtor as to the amount of damages suffered by Plaintiff due to Defendant-Debtor taking Plaintiff's 66% Split of the monies recovered (collected) on the State Court Judgment. Chapter 13 Trustee Jan Johnson disbursed $7,472.29 to Defendant-Debtor for the obligation on the State Court Judgment. Computing Plaintiff's 66% Split on the

monies recovered (collected) on the State Court Judgment from the Chapter 13 Trustee is as follows.

| Total Amount Recovered (Collected) By Defendant-Debtor on the State Court Judgment | | $7,472.29 | |
|---|---|---|---|
| Defendant-Debtor's 34% Split of Monies Recovered (Collected) on the State Court Judgment | | Plaintiff's 66% Split of Monies Recovered (Collected) on the State Court Judgment | |
| | $2,540.58 | | $4,931.71 |
| | | March 2018 Payment From Defendant-Debtor to Plaintiff for Plaintiff's 66% Split | ($1,000.00) |
| | | | ============== |
| | | Damages to Plaintiff by Defendant-Debtor Taking Plaintiff's 66% Split | $3,931.71 |

In Plaintiff's Direct Testimony Statement, she computes her 66% Split of the monies disbursed by Chapter 13 Jan Johnson to be $5,092.33, from which she then subtracts the ($1,000.00) payment for damages of $4,092.33. However, when the court used the payments shown by Chapter 13 Trustee Jan Johnson on the Creditor Distribution History for the payments made to Defendant-Debtor on the State Court Judgment, the court's computation is that Plaintiff's damages are $3,931.71. It appears that on Plaintiff's calculation a distribution of $243.14 is included for December 2017, where no distribution for December 2017 is shown by the Chapter 13 Trustee. This appears to be a simple clerical error by Plaintiff.

Defendant-Debtor offered no evidence of any expenses to which Defendant-Debtor was entitled to be paid before the 34%/66% Splits were determined based on the $7,472.31 disbursed by Chapter 13 Trustee Jan Johnson.

These damages of $3,931.71 are nondischargeable as arising from defalcation while acting in a fiduciary capacity, embezzlement, and willful and malicious injury (each a separate and independent legal basis) by Plaintiff. 11 U.S.C. § 623(a)(4), (6).

///

///

22

# PUNITIVE DAMAGES

California provides for an award of punitive damages, in addition to actual damages, in connection with some tort claims.  This analysis begins with California Civil Code § 3294, which provides in pertinent part:

§ 3294. When permitted

(a) In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant. . . .

(c) As used in this section, the following definitions shall apply:

(1) "Malice" means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others.

(2) "Oppression" means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights.

(3) "Fraud" means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury. . . .

The California Supreme Court discussed the proper awarding of punitive damages as provided for in California Code of Civil Procedure § 3294, stating:

As we [California Supreme Court] ourselves have recently observed, in order to justify the imposition of punitive damages the defendant "'. . . must act with the intent to vex, injure, or annoy, or with a conscious disregard of the plaintiff's rights. [Citations.]'" (Italics added; *Neal v. Farmers Ins. Exchange* (1978) 21 Cal. 3d 910, 922, 148 Cal. Rptr. 389, 582 P.2d 980, quoting from *Silberg v. California Life Ins. Co.* (1977) 11 Cal. 3d 452, 462, 113 Cal. Rptr. 711, 521 P.2d 1103; accord, *Seimon v. Southern Pac. Transportation Co.* (1977) 67 Cal. App. 3d 600, 607, 136 Cal. Rptr. 787; *G. D. Searle & Co. v. Superior Court* (1975) 49 Cal. App. 3d 22, 122 Cal. Rptr. 218.)

*Taylor v. Superior Court of Los Angeles County*, 24 Cal. 3d 890, 895, (1979).  As noted in Colonial Life & Accident Ins. Co. V. Superior Court, 31 Cal. 3d 785, 792 (1982),  "These elements [for punitive damages] may be proven directly or by implication. ( *Neal, supra*, at p. 923, fn. 6; *Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 65-66 [118 Cal. Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878].)"

In addressing the propriety of a punitive damage award in federal court, the United States Supreme Court has stated,

> In light of these concerns [procedural and substantive constitutional limitations], in *Gore supra*, 517 U.S. 559, we instructed courts reviewing punitive damages to consider three guideposts: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. Id., at 575, considers the proportionality of the punitive damages to the compensatory damages awarded to the Plaintiff-Debtor.

*State Farm Mutual Auto Insurance Company v. Campbell*, 538 U.S. 408, 418, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2004). The Supreme Court opined that while a punitive damage award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety, higher multiples have been awarded. *Id.* at 425.

In this Adversary Proceeding, the evidence shows that Defendant-Debtor knew that he had only a 34% Split of the monies recovered (collected) on the State Court Judgment and knew that Plaintiff had a 66% Split of the monies recovered (collected) on the State Court Judgment. Defendant-Debtor knew the 66% Split was Plaintiff's monies and that Plaintiff's 66% Split "SHALL" be disbursed at the first of each month to Plaintiff.

Though knowing that Plaintiff's 66% Split was Plaintiff's money, Defendant-Debtor intentionally and willfully diverted Plaintiff's monies to his own uses. This was a willful and conscious disregard to, and violation of, Plaintiff's rights to her 66% Split of the monies recovered (collected) on the State Court Judgment.

As documented in the Direct Testimony Statement of Chapter 13 Trustee Jan Johnson, and the information incorporated therein, Defendant-Debtor received the payments on the State Court Judgment during the period September 1, 2017, through August 9, 2019. In March 2018, Defendant-Debtor made the one and only disbursement in the amount of $1,000.00 to Plaintiff for her 66% Split in the monies recovered (collected) by Plaintiff-Debtor on the State Court Judgment

In August 2019, Defendant-Debtor commenced his voluntary Chapter 7 bankruptcy case. "Coincidentally," this was right after the final distribution was made by Chapter 13 Trustee Jan Johnson on the State Court Judgment in July 2018. Attachment to Declaration of Jan Johnson,

24

incorporated into the Direct Testimony Statement of Jan Johnson.

Defendant-Debtor's conduct is reprehensible, having taken the assignment of the State Court Judgment to enforce it for Plaintiff for the obligations owed to her by her Ex-Husband, and then taking Plaintiff's 66% Split of the monies recovered (collected) from Plaintiff for Defendant-Debtor's own purposes.  Defendant-Debtor is a very sophisticated, experienced judgment enforcement professional (as he describes himself) who has  preyed on the less sophisticated Plaintiff.

Again, Defendant-Debtor offered no credible testimony or evidence how he could think that he was not knowingly, intentionally, willfully taking Plaintiff's money when he took her 66% Split.  The Assignment Agreement, which was drafted by Defendant-Debtor, expressly states that Defendant-Debtor shares only in 34% of the monies recovered (collected) on the State Court Judgment.[10]

Not only did Defendant-Debtor act with a conscious disregard of Plaintiff's rights in and to the 66% Split, but based on the evidence presented Defendant-Debtor intended to cause the injury, and then "jump into bankruptcy" to try and slip out of the obligations arising from his misconduct.

Plaintiff prudently requests a very modest amount of punitive damages, $6,068.29.  This is one and one-half times the amount of the $3,931.71 in actual damages.  This is not only reasonable as a percentage of the actual damages, but is a reasonable, modest amount of punitive damages that can work to deter Defendant-Debtor, and others with contracts like his, from taking their clients' monies.

The court awards Plaintiff $6,068.29 in punitive damages.

**Nondischargabity of the Punitive Damages Awarded**

The punitive damages are also nondischargeable.  As addressed by the Ninth Circuit Court of Appeals in *Muegler v. Benning*, 413 F.3d 980, 984 (9th Cir. 2005), addressing conduct that rendered a debt nondischargeable pursuant to 11 U.S.C. § 523(a)(6), the court stated:

> When the awards of compensatory damages and punitive damages are based upon the same conduct, the punitive damages award will be nondischargeable under

---

[10]  Assignment Agreement, fifth paragraph; Exhibit 2.

§ 523(a)(6) if the compensatory damages award is found to be nondischargeable. *In re Adams*, 761 F.2d 1422, 1428 (9th Cir. 1985).

This nondischargeability determination is based on the conduct to which the punitive damages relate which resulted in the underlying debt being nondischargeable pursuant to 11 U.S.C. § 523. *See Cohen v. del La Cruz*, 523 U.S. 213 (1998).

Here we have intentional torts of defalcation while acting in a fiduciary capacity, embezzlement, and conversion of Plaintiff's monies by Defendant-Debtor, each of which are grounds for the debt being nondischargeable. The punitive damages award relates directly to and arises out of exactly the same conduct as the three torts. As with the damages caused Plaintiff, the punitive damages are nondischargeable.

### PREJUDGMENT INTEREST

Plaintiff also requests prejudgment interest be awarded on her $3,931.71 in actual damages. The prejudgment interest is requested from the November 28, 2018 filing of the State Court Action against Defendant-Debtor. This was after the last disbursement had been made by Chapter 13 Trustee Jan Johnson and the court has been requested that prejudgment interest be computed on the lump sum of $3,931.71 from the last date payment was recovered (collected) by Defendant-Debtor on the State Court Judgment.

California Civil Code § 3287 provides that when there is a damages amount that is certain, Plaintiff may recover interest thereon from the day such amount may be computed. California Civil Code § 3288 allows such prejudgment interest damages be awarded in cases not arising out of contract, as may be given by the finder of fact (here, the Bankruptcy Judge rather than a jury). California Civil Code § 3289 provides that if a contract sets a rate of interest, such interest remains chargeable after a breach of the contract. However, if the contract does not provide for a legal rate of interest, then the prejudgment interest is computed at 10% per annum.

If the obligation does not arise out of contract, then the prejudgment interest rate is 7% per annum. *Michaelson v. Hamada*, 29 Cal.App. 4th 1566 (1994).

Here, there is a contract between the Plaintiff and the Defendant-Debtor, that contract being the Assignment Agreement in which Defendant-Debtor was obligated to disburse Plaintiff's 66%

Split of the monies recovered (collected) on the State Court Judgment.  In failing to do so, Defendant-Debtor committed several torts which have resulted in his obligations not being discharged.  Though one may argue that it is a contractual obligation, given that the causes of action stated in the Complaint are for nondischargeable torts and asserting the right to punitive damages based on such torts, the court computes the prejudgement interest at 7% per annum.

The prejudgment interest of 7% per annum totals $1,022.12, which has been computed as follows:

|  | **Principal Amount For Computation of Prejudgment Interest** | **Prejudgment Interest Rate of 7% per annum** |
|---|---|---|
| **November 28, 2018** | $3,931.71 | |
| Interest From November 28, 2018 to November 30, 2019 (One Year and Two Days) | | $276.73 |
| Interest from December 1, 2019 to November 30, 2020 | | $275.22 |
| Interest From December 1, 2020 to November 30, 2021 | | $275.22 |
| Interest From December 1, 2021 to August 15, 2022 (Eight and One Half Months) | | $194.95 |
| | | ============== |
| | Total Prejudgment Interest | $1,022.12 |

The court awards Plaintiff $1,022.12 in prejudgment interest.

### ENTRY OF JUDGMENT FOR PLAINTIFF

The court grants judgment for Plaintiff and against Defendant-Debtor in the amount of $11,022.10; which consists of the $3,931.71 award for actual damages for the Plaintiff's monies taken by Defendant-Debtor, $6,068.29 in punitive damages, and $1,022.12 in prejudgment interest.

Additionally, the court determines that the $11,022.10 judgment is nondischargeable for each

27

of the following separate and independent grounds consisting of: (1) Defalcation While Acting in a Fiduciary Capacity pursuant to 11 U.S.C. § 523(a)(4), (2) Embezzlement pursuant to 11 U.S.C. § 523(a)(4), and (3) Willful and Malicious Injury to the Property of Plaintiff pursuant to 11 U.S.C. § 523(a)(6).

Plaintiff may seek attorney's fees, if any, and costs as provided in Federal Rule of Civil Procedure 54 and Federal Rule of Bankruptcy Procedure 7054.

The court shall enter a separate judgment granting the forgoing relief.

**Dated:** August 17, 2022

**By the Court**

**Ronald H. Sargis, Judge**
**United States Bankruptcy Court**

28

# Instructions to Clerk of Court
**Service List - Not Part of Order/Judgment**

**The Clerk of Court is instructed to** send the Order/Judgment or other court generated document transmitted herewith *to the parties below*. The Clerk of Court will send the document via the BNC or, if checked _____, via the U.S. mail.

| Debtor(s) / Defendant-Debtor(s) | Attorney for the Debtor(s) / Defendant-Debtor(s) (if any) |
|---|---|
| **Bankruptcy Trustee** (if appointed in the case) | Office of the U.S. Trustee<br>Robert T. Matsui United States Courthouse<br>501 I Street, Room 7-500<br>Sacramento, CA 95814 |
| **Attorney for the Trustee** (if any) | Raymond L. Sandelman, Esq.<br>196 Cohasset Road, Ste. 225<br>Chico, CA 95926 |